### No. 27,495.

Chan B. Campbell, *Appellee,* v. M. E. Killion, Constable of Garden City, The First National Bank of Garden City, H. M. Knox, and R. M. Wilkin, Doing Business as The Wilkin Produce Company, *Appellants.*

(257 Pac. 752.)

SYLLABUS BY THE COURT.

1. Chattel Mortgages — *Recording Statute Construed — "Creditors of Mortgagor."* The term "creditors of the mortgagor," as used in R. S. 58-301, does not mean general creditors, but only includes those who have specific liens upon, or rights to, the mortgaged property.

2. Same—*Recording—Duty as to General Creditors.* A mortgagee of personal property owes no duty to the general creditors of the mortgagor to record his mortgage.

Appeal from Finney district court; Charles E. Vance, judge. Opinion filed July 9, 1927. Affirmed.

*H. O. Trinkle,* of Garden City, for the appellants.
*Clifford R. Hope,* and *A. M. Fleming,* both of Garden City, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This is an action in replevin by a mortgagee. A Mrs. Zillman owned and operated a café in Garden City. On November 13, 1925, she mortgaged the furniture and fixtures in the café to plaintiff to secure indebtedness to him of $1,725. Plaintiff did not

---

Chattel Mortgages, 11 C. J. p. 515 n. 15. Records, 23 R. C. L. 170, 240.

Campbell v. Killion.

record this mortgage until May 22, 1926. By that time Mrs. Zill-man had become indebted to the bank $220 on her note, and to H. M. Knox $300, and R. M. Wilkins $64.20 on account. About June 1, 1926, Mrs. Zillman apparently abandoned the café and left Garden City. On June 3 the bank, Knox and Wilkins sued on their respective claims in justice court and attached the furniture and fixtures in the café. Plaintiff then brought this action against the constable and attaching creditors. At the trial, by agreement, a jury was called to answer special questions only. They answered questions as follows:

"1. Did the defendants or any of them, extend credit to Mrs. Zillman after the date of the execution of the plaintiff's note and chattel mortgage, without knowledge of such note and mortgage, and relying upon the belief and appearance that Mrs. Zillman was the owner of said mortgaged property, subject only to the balance due to Mr. Garnand? A. Yes.

"2. At the time the plaintiff took the note and chattel mortgage from Mrs. Zillman on November 13, 1925, was Mrs. Zillman insolvent? A. Yes.

"3. If you answer question number 2 in the affirmative, then did plaintiff know that she was insolvent? A. No.

"4. Did the plaintiff agree with Mrs. Zillman that he would not record his chattel mortgage until there was danger of suits by creditors? A. Yes.

"5. Did the plaintiff file his chattel mortgage before he knew there was *danger* of suits being brought by creditors of Mrs. Zillman? A. No.

"6. Did the plaintiff take his chattel mortgage for $1,725, dated November 13, 1925, in good faith? A. Yes.

"7. Did the plaintiff withhold the recording of his chattel mortgage so taken, for the purpose of deceiving or injuring the defendants or any of them? A. Yes.

"8. Did the plaintiff withhold his mortgage from record for the purpose of aiding Mrs. Zillman's credit? A. Yes."

The court modified the jury's finding No. 7 by finding that the mortgage was withheld with the intent and for the purpose of avoiding injury to Mrs. Zillman's credit and to conceal from the public generally the extent of her indebtedness without any reference particularly to the defendants. Judgment was rendered for plaintiff. Defendants have appealed.

Appellants contend that plaintiff's withholding the chattel mortgage from record, under the facts found, was a fraud upon them and estops plaintiff from claiming a lien prior to this attachment lien. On this point they cite 23 R. C. L. 240; *Belcher v. Curtis,* 119 Mich. 1; *Hagerty v. Goodland,* 70 Kan. 734, 79 Pac. 664, and allied authorities. Without analyzing these authorities, though such analysis

perhaps would reach the same result, we conclude that the question is controlled by our recording statute (R. S. 58-301), the pertinent portion of which reads:

"Every mortgage . . . shall be absolutely void as against the creditors of the mortgagor, . . . unless the mortgage . . ." is recorded.

The "creditors of the mortgagor" mentioned in the statute include only those having some specific lien upon, or right to, the mortgaged property. The term does not embrace mere general creditors. (*Youngberg v. Walsh,* 72 Kan. 220, 83 Pac. 972.) See, to the same effect, *Geiser v. Murray,* 84 Kan. 450, 455, 114 Pac. 1046; *Bank v. Walters,* 92 Kan. 391, 393, 140 Pac. 864, and *Big Four Implement Co. v. Wright,* 207 Fed. 535, applying the Kansas statute.

Applying our statute as interpreted by the above authorities to the facts found in this case, it is clear that plaintiff owed defendants no duty to record his mortgage, so long as they were merely general creditors, having no liens upon, or rights to, the possession of specific property in question. Defendants acquired no such lien or right of possession until they made their attachment levies, which was June 3. Plaintiff's mortgage had been recorded prior to that date. Being first in time, plaintiff's was a lien upon the property prior to lien of defendants.

There is no reason for disturbing the judgment of the court below, and it is affirmed.

HOPKINS and HUTCHISON, JJ., not sitting.