2004 UT 9

**CHASE MANHATTAN BANK, and MP Ventures, L.C., Plaintiffs and Appellees,**

v.

**PRINCIPAL FUNDING CORPORATION, Defendant and Appellant.**

No. 20020203.

Supreme Court of Utah.

Jan. 27, 2004.

Ronald G. Russell, Jeffrey D. Stevens, Salt Lake City, for plaintiffs.

Steven W. Call, Michael D. Mayfield, Salt Lake City, for defendant.

WILKINS, Justice:

¶ 1 Principal Funding Corporation ("PFC") appeals the trial court's entry of judgment in favor of the plaintiffs, Chase Manhattan Bank ("Chase") and MP Ventures, L.C. ("MP Ventures"), declaring that PFC held no valid judgment lien against a certain parcel of real property and quieting title in the property in favor of MP Ventures. We reverse.

## BACKGROUND

¶ 2 MP Ventures owns an interest in real property located on Lincoln Street in Salt Lake City ("subject property"). In 1994, the subject property was owned by Lan England. England became a judgment debtor in April of 1994 when a judgment was entered against him in Third District Court in the case of *Lan C. England v. Eugene Horbach, et al.*, Civil No. 930901471 CV (Third Dist. Ct. Apr. 18, 1994) ("Horbach Judgment"). In October of 1995, the court of appeals reversed the Horbach Judgment. *England v. Horbach*, 905 P.2d 301 (Utah Ct.App.1995). Language found in a footnote to the court's opinion purported to "vacate the trial court's judgment." *Id.* at 302 n. 1. However, the court of appeals concluded its opinion by noting that it was "revers[ing] and remand[ing] for further action consistent with [its] opinion." *Id.* at 305. Horbach timely filed a petition for writ of certiorari with this court in November of 1995. That petition was granted in February of 1996. Slightly over one year later, in May of 1997, the court of appeals' decision was reversed by this court. *England v. Horbach*, 944 P.2d 340 (Utah 1997).

¶ 3 In May of 1996, while review of the court of appeals' opinion was pending, England borrowed $500,000 from Option One Mortgage Corporation ("Option One"). As security for the loan, England granted a trust deed on the subject property in favor of Option One. Nearly four years after our decision in *England v. Horbach*, Scott Lundberg, the trustee of the Option One deed, filed a notice of default, conducted a non-judicial sale, and granted a trustee's deed in favor of Chase, the purchaser at the sale. Chase is MP Ventures' predecessor-in-interest to the subject property. PFC is the successor-in-interest to the Horbach Judgment.

¶ 4 Some time later, PFC directed the Salt Lake County Sheriff to conduct a sheriff's sale of the subject property in execution of the Horbach Judgment. Chase and MP Ventures instituted the present action seeking an injunction preventing the sale and a declaratory judgment quieting title in the subject property in favor of MP Ventures. The trial court ultimately granted Chase and MP Ventures the relief they sought.

¶ 5 The trial court held that the court of appeals' decision in *England v. Horbach* vacated the Horbach Judgment and that Horbach's failure to request a stay of that vacation was fatal to its lien. Although it was later reinstated by this court, the trial court held that the judgment lien was junior to the trust deed, which was recorded during the pendency of the previous proceedings before this court. PFC appeals.

## ANALYSIS

### I. STANDARD OF REVIEW

¶ 6 The existence and scope of a judgment lien is defined by statute. Utah Code Ann. § 78–22–1 (Supp.2003). Statutory questions are questions of law reviewed for correctness. *Toone v. Weber County*, 2002 UT 103, ¶ 4, 57 P.3d 1079.

## II. EFFECT OF COURT OF APPEALS' REVERSAL OF HORBACH JUDGMENT

¶ 7 Our resolution of this matter hinges on the effect of the court of appeals' opinion and its remittitur in *England.* If the court of appeals' opinion actually vacated the trial court's judgment, the judgment lien held by PFC on the subject property would have been dissolved at the time of the trustee's sale at which Chase acquired its title to the property. However, if the court of appeals' opinion was not self-executing, PFC's judgment lien continued to be effective and is superior to the trustee's deed now held by MP Ventures. If, upon remittitur and the revesting of jurisdiction, the trial court failed to enter an order vacating the Horbach Judgment before this court granted certiorari—again depriving the trial court of jurisdiction—the judgment remained in effect.

¶ 8 The court of appeals' opinion contemplated further action by the trial court. In its opinion in *England,* the court of appeals stated that it "vacate[d] the trial court's judgment based upon defendant's counterclaim," and reversed and remanded the matter to the trial court "for further action consistent with [its] opinion." 905 P.2d at 302 n. 1, 305. Chase and MP Ventures essentially argue that the opinion's language regarding the vacation of the trial court's judgment effectively accomplished the vacation once remittitur was issued and PFC failed to obtain a stay. This position, although reasonable, misunderstands the nature of remand and remittitur, and is at odds with the court of appeals' own language in *England,* which suggested further action by the trial court.

¶ 9 Remittitur is not an order of the appellate court, but merely gives the trial court such jurisdiction as it needs to implement the appellate court's decision in the matter. 5 C.J.S. *Appeal and Error* § 968 (1993). Remittitur is a formal revesting of jurisdiction with the trial court after appellate proceedings and is governed by the Utah Rules of Appellate Procedure. Utah R.App. P. 36. At the time of the court of appeals' reversal of the Horbach Judgment, our remittitur rule differed from the rule in effect today. In 1995, rule 36 of the Utah Rules of Appellate Procedure provided that the court of appeals was to issue its remittitur to the trial court "immediately after the expiration of the time for filing a petition for writ of certiorari." *Id.* at 36(a)(2) (1995). The 1995 rule also contained a provision allowing a party to request a stay of the issuance of remittitur to prevent further action by the trial court while the party's petition for writ of certiorari was pending. *Id.* at 36(a)(3). Today's rule, however, provides that a stay of remittitur is automatic upon the filing of a petition for writ of certiorari. Utah R.App. P. 36(a)(2) (2003). Our resolution of this case under the previous rule presents us with an opportunity to address the implications of remittitur.

¶ 10 Although other jurisdictions have processes similar to remittitur under our rules, not all jurisdictions give it the same effect. For instance, in Florida, remittitur has been viewed as a final judgment, with no further action required by the trial court to effectuate the opinion of the appellate court. *Robbins v. Pfeiffer,* 407 So.2d 1016, 1017 (Fla. Dist.Ct.App.1981) (holding that a judgment affirmed on appeal was final upon remittitur). Illinois has followed a similar rule. *Brandon v. Caisse,* 172 Ill.App.3d 841, 122 Ill.Dec. 746, 527 N.E.2d 118, 120 (1988) (noting that appellate judgment is final when entered). Other courts have taken a different tack, opting to view remittitur as a mere revesting of jurisdiction with further action required by the trial court. *Begley v. Vogler,* 612 S.W.2d 339, 341 (Ky.1981); *In re J.L.M.,* 234 Neb. 381, 451 N.W.2d 377, 386 (1990). Still another court has suggested that an unqualified reversal by an appellate court requires no further action by the trial court, but that a qualified reversal or a reversal with instructions does require further action. *Puritan Leasing Co. v. Superior Court of Santa Barbara County,* 76 Cal.App.3d 140, 142 Cal. Rptr. 676, 679–80 (1977). Multiple courts also recognize that an appellate court retains enough jurisdiction to compel a lower court's compliance with the appellate decision through issuance of a writ of mandamus. *Begley,* 612 S.W.2d at 342; *Curtis v. Nobles,* 588 S.W.2d 687, 688 (Tex.Civ.App.1979).

¶ 11 Our past jurisprudence does not clearly identify the effect of remittitur in Utah. On one occasion this court announced that "[t]he judgment of the appellate court ... is not self-executing. It is certified or remitted back to the court from which the appeal was taken, for execution of the judgment." *State v. Johnson*, 100 Utah 316, 114 P.2d 1034, 1037 (1941). This statement accurately, albeit incompletely, explains the effect of remittitur in Utah.

¶ 12 When an appellate court affirms the judgment of a trial court, no further order is needed from the trial court. *Begley*, 612 S.W.2d at 341–42. This is because the trial court's original order merely remains intact. As a result, the trial court need not act for a valid order to be found in the record. However, a reversal or qualified affirmance will almost always require further action by the trial court. *Id.* This rule is subject to the appellate court's exercise of its power under either the Utah Constitution or the Utah Code to fully and finally dispose of the matter. Utah Const. art. VIII, § 3; Utah Code Ann. § 78–2a–3(1)(a) (2002). In the event the appellate court elects to invoke this power, it will only do so expressly, noting specifically that no further action is required by the trial court. Unless the context clearly requires otherwise,[1] words in an opinion such as "we vacate" are not sufficient to render the case finally disposed of in the absence of a specific directive noting that the trial court need do nothing further upon remittitur. Thus, words such as "vacate" and "dismiss" are not terms of art when used in such a manner as to imply the court's disposition of the matter; rather, they represent expressions of the appellate opinion to be read as the law of the case upon the revesting of jurisdiction in the trial court by remittitur. *Puritan*, 142 Cal.Rptr. at 679–80.

¶ 13 The application of this rule is plain in this case. The court of appeals' opinion at issue noted both that the judgment was vacated and that the court was remanding the matter "for further action consistent with [its] opinion." *England*, 905 P.2d at 302 n. 1, 305. It is evident that the court of appeals did not intend for its opinion to finally dispose of the case. Rather, the court noted that further action was required. Because the trial court took no action to vacate its judgment, the judgment lien claimed by PFC against the subject property has remained in effect continuously since the judgment was initially entered by the trial court in 1994. It has priority over MP Ventures' deed, which is based on a trust deed granted on the property in 1996.

## CONCLUSION

¶ 14 We conclude that PFC holds a valid judgment lien against the subject property because the judgment upon which it is based has been in continuous effect since it was entered by the trial court in 1994. The court of appeals' decision to vacate the Horbach Judgment was not effectuated by an order from the trial court prior to this court's acceptance of Horbach's petition for writ of certiorari and our ultimate reversal of the court of appeals' opinion. We reverse and remand to the trial court for proceedings consistent with this opinion.

¶ 15 Chief Justice DURHAM, Justice NEHRING, Judge ORME, and Judge HANSEN concur in Justice Wilkins' opinion.

¶ 16 Having disqualified themselves, Associate Chief Justice DURRANT and Justice PARRISH do not participate herein; Court of Appeals Judge GREGORY K. ORME and District Judge DARWIN C. HANSEN sat.

---

1. *See, e.g., Hi–Country Estates Homeowners Ass'n v. Foothills Water Co.*, 942 P.2d 305, 307 (Utah 1996) ("The court of appeals erred in remitting the case before the time to seek certiorari had expired under the rules and erred again when it refused to recall its erroneously issued remittitur.").

The judgment of the district court is void because that court had no jurisdiction to enter a judgment while the case was still pending in the appellate courts. The district court judgment is vacated as void.").